D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND-SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and PATRICK MICHELS, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. The Center for Investigative Reporting ("CIR") and Patrick Michels (together, "Plaintiffs") seek expedited processing and release of agency records requested from Defendant the United States Department of Health and Human Services ("HHS") pertaining to records from the Office of Refugee Resettlement ("ORR") under the Administration for Children and Families ("ACF").

//

//

2. On November 28, 2018 and December 7, 2018, Plaintiffs submitted two Freedom of Information Act requests (the "Requests") to HHS seeking records pertaining to ORR's use of undisclosed out-of-network facilities, caring for immigrant children in government custody.

3. To date, Defendant has failed to comply with statutory deadlines and has provided no response to Plaintiffs.

4. This matter is of particular public interest because the standard of care employed at some out-of-network facilities remains unknown. Just as government workers and federal contractors are required to maintain certain policies and standards, so are ORR's out-of-network care providers. These facilities are publicly accountable given they are publicly funded and have an immense impact on immigrant children in government custody.

5. The public interest in the release of the requested records is substantial as they implicate the lives of immigrant minors, particularly those with serious mental or behavioral health needs.

6. Plaintiffs now ask the Court for an injunction requiring HHS to promptly release the withheld records. ORR and ACF are components of HHS. HHS has its headquarters in Washington, D.C. and offices all over the country, including in Oakland and San Francisco, California.

## PARTIES

7. Plaintiff CIR publishes *Reveal*, an online news site at revealnews.org and produces *Reveal*, a weekly public radio show with approximately 1 million listeners a week. Founded in 1977, as the first national investigative news organization, CIR has received multiple awards for its reporting. CIR is a non-profit newsroom established under the laws of the State of California, with its primary office in Emeryville, California.

8. Patrick Michels is a staff reporter for *Reveal* and an employee of CIR.

9. Defendant HHS is a department of the executive branch of the U.S. government and an "agency" within the meaning of 5 U.S.C. §552(f)(1). HHS has its headquarters in Washington, D.C. and offices all over the country, including in Oakland and San Francisco, California.

## JURISDICTION

10. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

11. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402. Plaintiff CIR has its principal place of business in this district.

12. Assignment to the Oakland Division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where Plaintiffs are located.

## FACTUAL BACKGROUND

### HHS and ORR Responsibilities for Placing Unaccompanied Minor Children in Care Facilities

13. By law, HHS is responsible for the custody of unaccompanied minor children ("UAC"), defined as children under 18 years of age who do not have lawful immigration status in the United States and have no legal guardian in the United States. *See* 6 U.S.C. § 279(g)(2). ORR is the federal office within HHS that houses and cares for unaccompanied children detained by the United States. ORR, *About Unaccompanied Alien Children's Services* (June 15, 2018), https://bit.ly/2GQtM3K.

14. Unaccompanied children are usually transferred to ORR's care after they are apprehended by the U.S. Department of Homeland Security, Immigrations and Customs Enforcement (ICE) and Customs Border Protection (CBP) officials. *Id.*; *see also* ORR, *Children Entering the United States Unaccompanied: Section 2* (Jan. 30, 2015), https://bit.ly/2JYxZZs. After they are transferred, ORR temporarily houses these children in a network of various facilities until ORR can place the minor with a family member or sponsor in the United States. *Id.*

15. In 2017, pursuant to the Trump Administration's new policies, ICE began detaining a growing number of unaccompanied minor children and referring them to ORR. Anjali Tsui, *In Crackdown on MS-13, a New Detention Policy Raises Alarms*, FRONTLINE, Feb. 18, 2018,

https://to.pbs.org/2EFw59r.

16. Based on agency records, the influx of unaccompanied minors has increased the demand for the number of ORR's facilities. *See, e.g.*, ORR, J&A UNDER FAR SUBPART 6.3 – JUSTIFICATION FOR OTHER THAN FULL AND OPEN COMPETITION, *available at* https://bit.ly/2K1s4mH ("[i]n order to meet the increase in referrals of unaccompanied alien children (UAC) with violent criminal background and gang affiliation, Office of Refugee Resettlement (ORR) needs to procure secure bed capacity needs…to accommodate this influx that has caused the current facilities to experience over capacity issues.").

17. Under ORR standards, the agency's general practice is to place these unaccompanied minors "*within* the ORR funded care provider network." ORR, *Children Entering the United States Unaccompanied* (Jan. 30, 2015), https://bit.ly/2CO8XqB (emphasis added). However, ORR standards permit the agency to move children into "alternative placement" outside of the network when "there is no care provider available within the network to provide specialized services needed for special needs cases." *Id.*

18. Because the circumstances of unaccompanied minors make them especially vulnerable, it is especially important "[t]hese care provider facilities (whether in-network or out-of-network) are state licensed and must meet ORR requirements to ensure a high level of quality of care…[as t]hey provide a continuum of care for children…" ORR, *About Unaccompanied Alien Children's Services, supra; see also id.* (stating "[the] age of these individuals, their separation from parents and relatives, and the hazardous journey they take make unaccompanied alien children especially vulnerable to human trafficking, exploitation and abuse").

19. ORR's requirements for the in-network care facilities are set out in various cooperative agreements, grant agreements, and contracts that can be viewed by the public. *See id.* (stating "[t]he care providers operate under cooperative agreements and contracts, and provide children with classroom education, health care, socialization/recreation, vocational training, mental health services, family reunification, access to legal services, and case management.").

20. ORR's requirements for the "alternative placement" facilities remain unknown, especially where the respective contracts and other agreements are not publicly available.

-4-
COMPLAINT FOR INJUNCTIVE RELIEF

21. The government is contractually required to be transparent about ORR's out-of-network care providers. The Flores Settlement Agreement, a court settlement, resulting from a landmark litigation with the federal government, sets out the national standards for the government's treatment and placement of minors. Since 1997, it mandates certain transparency requirements about where children are being placed. *See* HumanRightsFirst.org, *Fact Sheet: The Flores Settlement and Family Incarceration: A Brief History and Next Steps*, Oct. 20, 2018, https://bit.ly/2uEbCyo. Under the Flores Settlement Agreement, ORR is required to provide attorneys representing detained children with regular, detailed information, including what facility the child is being held at – regardless of whether the facility is in or out-of-network. *Id.*

## *Reveal* Reports ORR Referred UACs to Undisclosed Out-of-Network Care Facilities

22. On March 18, 2019, *Reveal* published an investigation finding that ORR is relying on several undisclosed out-of-network shelters to care for unaccompanied minors. Aura Bogado and Patrick Michels, *US Government Uses Several Clandestine Shelters to Detain Immigrant Children*, REVEAL, March 18, 2019, https://bit.ly/2Theawf.

23. *Reveal* reported that there are at least five alternative placement facilities, which the government had not disclosed to attorneys, in abrogation of the Flores Settlement Agreement. *Id.*

24. The Government later confirmed to *Reveal* that at least 15 children were being held at these alternative placement facilities. Aura Bogado and Patrick Michels, *Government acknowledges 15 to 20 migrant children held in 'out of network' facilities*, REVEAL, March 19, 2019, https://bit.ly/2HwYDHf.

25. A spokesperson for ORR stated that the undisclosed, out-of-network facilities are state-licensed and monitored monthly by the agency. *Id.* But all contracts, agreements, and other documents stating what standards, protocols and other practices are required by the government remain unknown.

//

**Immense Public Interest in ORR's Shelter System**

26. News organizations have long been covering the expansion of the ORR shelter network which houses the growing number of UACs. For instance, in 2014, *Mother Jones* published a map of the shelters, made from documents collected through a 2014 FOIA request. Ian Gordon, *This is Where The Government Houses the Tens of Thousands of Kinds Who Get Caught Crossing the Border*, MOTHER JONES, Jun. 3, 2014, https://bit.ly/2Mc515Y. More recently, *The Washington Post* covered the influx and capacity for these shelters. Colby Itkowitz, *The Health 202: The Small HHS Agency Detaining Migrant Kids Isn't Meant For the Task*, THE WASHINGTON POST, June 20, 2018, https://wapo.st/2yGsZnc.

27. *Reveal* has consistently reported on this topic and related issues of public importance. Aura Bogado, Patrick Michels, Vanessa Swales and Edgar Walters, *Migrant Children Sent to Shelters With Histories of Abuse Allegations*, REVEAL, June 20, 2018, https://bit.ly/2thYTBt; Reveal and PRX, *Reveal Answers Your Questions About Immigration*, REVEAL, June 9, 2018, https://bit.ly/2JwLyPu; Patrick Michels, *Federal Agency Refers Girls to Counselors Picked By Anti-Abortion Group*, REVEAL, Nov. 21, 2017, https://bit.ly/2AiJA0l.

28. The public need for disclosure of documents discussing these contracts is compelling as the disclosure of these documents would reveal what requirements out-of-network facilities are obligated to follow and if they are held to federal standards while caring for UACs held under government supervision.

**The First FOIA Request**

29. By email dated November 28, 2018, CIR submitted through its reporter Patrick Michels, a FOIA request to ORR (hereinafter "the First Request") seeking any documents disclosing alternative placement facilities that had not been publicly listed by the agency. A copy of the First Request is attached hereto as Exhibit A.

30. More specifically, it requested, among other documents: "Records sufficient to show, since January 1, 2016, any cases in which ORR approved the placement of an

unaccompanied child outside the DUCO care network, including but not limited to the date of the approval, the justification, and the name and location of the out-of-network provider." *See id.*

31. Plaintiffs seek a waiver of search, review, and reproduction fees for the First Request on the grounds that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

32. Plaintiffs seek a waiver of search and review fees for the First Request on the grounds that *Reveal* qualifies as a "representative of the news media" and that the records are not sought for commercial use. *Id.* § 552(a)(4)(A)(ii).

33. On January 25, 2019, Mr. Michels sent an email to ORR asking for an acknowledgment letter of the First Request. A copy of that correspondence is attached hereto as Exhibit B.

34. On January 28, 2019, ORR's Director of the Freedom of Information Office responded to Mr. Michels stating that the First Request was never logged but would logged be the following day. *Id.*

35. On February 4, 2019, Mr. Michels still had not received a response and emailed the Director requesting acknowledgement letter and tracking number. *Id.*

36. That same day, a FOI officer responded stating the First Request would be logged that day. *Id.*

37. To date, HHS has not sent an acknowledgment letter and made no final determination on the First Request.

38. HHS has failed to comply with FOIA's requirement that an agency will respond to the Request within the 20 business days.

39. Having exhausted all administrative remedies, Plaintiffs now seek injunctive and other appropriate relief.

//
//

-7-
COMPLAINT FOR INJUNCTIVE RELIEF

## The Second FOIA Request

40. By email dated December 7, 2018, CIR submitted through its reporter Patrick Michels, a FOIA request to HHS (hereinafter "the Second Request") seeking any documents referring to any alternative placement facilities that had not been publicly listed by the HHS. A copy of the Second Request is attached hereto as Exhibit C.

41. More specifically the Second Request sought:
- Any and all records related to care for unaccompanied immigrant minors at a facility in Fordyce, Arkansas, named Millcreek of Arkansas, Millcreek Behavioral Health, Habilitation Center, Inc., or Acadia Healthcare. Documents should include but are not limited to those that disclose subcontracting, financial records, or emails.
- Any documents detailing or listing all subcontracted or similar facilities responsible for the care and shelter of unaccompanied minors on behalf of ORR, under a subcontract or similar arrangement such as the arrangement by which Millcreek houses children in the custody of ORR.

42. Plaintiffs seek a waiver of search, review, and reproduction fees for the Second Request on the grounds that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

43. Plaintiffs seek a waiver of search and review fees for the Second Request on the grounds that *Reveal* qualifies as a "representative of the news media" and that the records are not sought for commercial use. *Id.* § 552(a)(4)(A)(ii).

44. By email dated December 17, 2018, ORR sent an acknowledgment letter of the Second Request and issued the tracking number 2019-00343-FOIA-OS. A copy of that letter is attached hereto as Exhibit D. The agency stated that it referred the request to ACF, within HHS and that upon receipt ACF would log the request and issue a new tracking number. *Id.*

45. To date, HHS has made no final determination on the Second Request.

46. HHS has failed to comply with FOIA's requirement that an agency will respond to the Second Request within the 20 business days.

47. Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief and other appropriate relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

48. Plaintiffs repeat and reallege paragraphs 1–47.

49. HHS is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

50. HHS has no lawful basis for declining to release the records requested by Plaintiffs in the Requests under FOIA.

51. HHS has failed to act on Plaintiffs' Requests within the 20 business days required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i). Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

52. Plaintiffs are entitled to an order compelling HHS to produce records responsive to the Requests.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1. Declare that Defendant HHS violated FOIA by failing to comply with the 20 business days required by FOIA and notifying Plaintiffs of any determination;

2. Declare that HHS violated FOIA by failing to determine whether to provide expedited processing within 10 days and thereafter notifying Plaintiffs of such determination;

3. Declare that the documents sought by the Requests, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

4. Order Defendant HHS to provide the requested documents to Plaintiffs within 20 business days of the Court's order, or in the alternative, provide for expedited proceedings to adjudicate Plaintiffs' rights under FOIA;

5. Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

6. Grant Plaintiffs such other and further relief as this Court may deem just and proper.

DATED: April 3, 2019

Respectfully submitted,

By: /s/
D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
vbaranetsky@revealnews.org

Attorney for Plaintiffs